## Snyder's Case.

Jay G. Weiser, for rule; A. Francis Gilbert, contra.

POTTER, P. J., Oct. 10, 1929.—This is a petition and a rule on William S. Snyder to show cause why he should not be removed from the office of Super-

visor of Public Roads in Union Township, at the instance of thirty-four citizens of that township, "on account of neglect of duty, not properly repairing said roads when most necessary therefor, leaving roads almost impassable for a long period of time, and some of them never good condition," quoting from the petition presented to us. We can find no evidence in the notes of testimony that "some of them are never in good condition," but we have some evidence that some of the roads in Union Township are at times not in good condition, this occurring mostly in the spring of the year, when the frost leaves the ground, or during times of heavy rains.

The most of the testimony in support of the rule in reference to a bad condition of the roads has reference to several roads in Union Township, in which there occur winter springs, sink-holes and swampy wet land. It is to be expected during certain seasons of the year, in regions like the one under contemplation, that bad mirey places in township roads may occur. This universally happens in township roads, and in many instances the road supervisors are to be congratulated upon keeping them in as good condition as they are. Of course, they must be kept and maintained in a fairly passable condition for public travel. This, however, does not mean that they must be kept with a smooth surface like a cement or a macadam road.

We have six witnesses who testify against Snyder, and ten for him. We are not controlled by the number of witnesses on either side, but in this case this fact should receive some consideration, but in reading the testimony we find the complaints to be centered chiefly on swampy roads, or on roads by nature boggy, and nearly all the witnesses, both pro and con, unite in saying that during the summer and fall months all the roads are fairly passable.

In all the testimony we fail to find any evidence tending to show that Snyder wilfully neglected the upkeep of roads in this section of the township. True, perhaps he might have done more, when he might then be open to criticism by his constituents. He might be criticised if he did or did not, as often happens.

The office of road supervisor is not a pleasant one, and in each instance we find those who commend as well as those who find fault, no difference what may be done, and if each supervisor hearkened to each citizen of his township, he would please no one, with the wide diversity of opinion prevailing.

In passing upon the events of this proceeding we are led to the belief that there are several clans or cliques in this township, one of which is for, and the other against, Snyder. We take sides with neither, and can well say that the courts are not the place to settle these differences. Snyder must have been elected to his office by a majority of the voters, else he would not be in office. They apparently placed confidence in him or they would not have voted him in office. And in the number of witnesses called we find a corresponding majority of them saying that he has done fairly well. Then, in the absence of flagrant abuse of official duty, why should we disturb their choice in the exercise of the office in which they have placed him? At the election polls is the place to express dissatisfaction regarding his official career and not in the courts.

We cannot find from the testimony submitted to us that he has been flagrantly disobedient of his official duties. Each public officer is persumed to have acted faithfully and well, and this presumption must be overcome by a preponderence of evidence, which has not been done in this case. The burden rests on the petitioners, and with six against him and ten for him, we do not think this burden has been met.

And now, to wit, Oct. 10, 1929, the rule is discharged